Scott P. Shaw (SBN 223592)
SShaw@Merchantgould.com
**MERCHANT & GOULD P.C.**
8383 Wilshire Blvd., Ste. 935
Beverly Hills, CA 90211
Telephone:  (949) 330-0202

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Boardriders IP Holdings, LLC and ABG-Volcom, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Jacob Shaw, Inc. and DOES 1-10<br><br>Defendants. | **COMPLAINT**<br><br>**(1) INFRINGEMENT OF REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114**<br>**(2) COUNTERFEITING OF REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114**<br>**(3) UNFAIR COMPETITION, FALSE DESCRIPTION, AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)**<br>**(4) COMMON LAW TRADEMARK INFRINGEMENT**<br>**(5) FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE § 17500**<br>**(6) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Boardriders IP Holdings, LLC ("Boardriders") and ABG-Volcom, LLC ("Volcom") file this complaint against Defendants Jacob Shaw Inc. ("JSInc") and Does 1-10, and allege as follows:

## PARTIES

1.     Plaintiff Boardriders IP Holdings, LLC is a California limited liability company having its principal place of business at 1411 Broadway, 21st Floor, New York, NY 10018.

2.     Plaintiff ABG-Volcom, LLC is a Delaware limited liability company having its principal place of business at 1411 Broadway, 21st Floor, New York, NY 10018.

3.     Defendant JSInc is a California corporation having its principal place of business at 4475 Mission Blvd 226, San Diego, California 92109. On information and belief, JSInc owns and operates HB SuperStore, located at 121 Main Street, Huntington Beach, California 92647. *See* www.indeed.com/viewjob?jk=88ba513b9ad1a8ad.

4.     Defendants John Doe Nos. 1-10 are unidentified entities or individuals who have sold and supplied counterfeit goods that infringe Plaintiffs' asserted trademarks to JSInc.

## JURISDICTION AND VENUE

5.     This case arises under the provisions of the Lanham Act (15 U.S.C. §§ 1051-1127). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1114 and 1125.

6.     The Court has personal jurisdiction over JSInc because it is a California corporation having its principal place of business in California and conducting business operations within California, including the specific acts of infringement alleged below. The Court has personal jurisdiction over Does 1-10 because on information and belief, they have carried out infringing sales within California, including sales to JSInc.

COMPLAINT

7.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because Defendants' acts of infringement have occurred in this district, including JSInc's offer for sale and sale of counterfeit goods that infringe Plaintiffs' asserted trademarks at its store in Huntington Beach, California. Further, on information and belief, a substantial part of the personal property subject to this action is situated within this district at JSInc's Huntington Beach store. In addition, venue in this judicial district is proper under 28 U.S.C. § 1391(c) because the Court has personal jurisdiction over Defendants.

## FACTUAL BACKGROUND

### A.    *Boardriders and Its Asserted Trademarks*

8.     Boardriders is a global leader in the action sports and lifestyle apparel industry. As the owner of an iconic portfolio of brands, including Quiksilver, Roxy, DC Shoes, RVCA, and Element, Boardriders has cultivated a worldwide reputation for authenticity, innovation, and quality in the surfing, skateboarding, and snowboarding communities.

9.     Through its predecessor entities' and its own extensive efforts, Boardriders has invested millions of dollars in developing, marketing, and protecting its valuable trademarks and associated brands. The company's products are distributed in more than 110 countries through retail customers that include surf shops, skate shops, snow shops, and an e-commerce presence. This extensive market penetration has resulted in widespread and continuous use of its trademarks, making them famous and instantly recognizable to consumers worldwide. The company's commitment to sponsoring top-tier athletes, hosting world-class sporting events, and producing acclaimed films and digital content has further solidified the global renown of its brands.

10.     In early 2018, Boardriders expanded its extensive holdings by acquiring Billabong International Limited ("Billabong"). Established in 1973, Billabong has grown from a simple boardshort company into a globally recognized brand in the

surfing and skating communities. Through brands like BILLABONG and RVCA (pronounced "REW-KA"), Billabong has cemented its status a leader in sports apparel.

11. The BILLABONG brand is supported by a vast portfolio of intellectual property rights, including more than 700 trademarks covering a wide variety of goods and services. This portfolio includes the below BILLABONG word marks and the BILLABONG UNITED logo in International Class 25 (the "BILLABONG Marks") at issue in this action:

| Mark | Reg. No. | Reg. Date | Description of Goods |
|------|----------|-----------|----------------------|
| BILLABONG | 1277128 | 5/8/1984 | Articles of Clothing Men's and Ladies' Shirts, T-Shirts; Men's and Ladies' Shorts, Jackets; Men's and Ladies' Trousers, [ Singlets, ] Skirts [ ; and Ladies' Pedal Pushers ]. |
| BILLABONG | 4503766 | 4/1/2014 | [ Jewellery [*sic* throughout] and costume jewellery; charms; ornaments of precious metal, namely, ornamental pendants and ornamental pins; precious gemstones and semiprecious gemstones; watches and clocks, and parts of the foregoing goods; watch accessories, namely, watch bands, watch chains, watch straps and watch cases; jewellery cases and jewellery boxes of precious |

- 3 -
COMPLAINT

| Mark | Reg. No. | Reg. Date | Description of Goods |
|------|----------|-----------|----------------------|
| | | | metal, precious metal alloys or coated therewith; medallions and badges of precious metal, precious metal alloys or coated therewith; key rings, key chains, key cases, key tags and key fobs, all of precious metal, precious metal alloys or coated therewith ] |
| BILLA BONG **B I L L A B O N G** | 7177103 | 9/26/2023 | Clothing, namely, shirts, T-shirts, polo shirts, singlets, blouses, tops, sweaters, cardigans, jackets, pullovers, coats, wind jackets, bodysuits, dresses, skirts, sarongs, trousers, pants, denim clothing in the nature of shorts, overalls, pants, skirts, jackets, jeans, overalls, shorts, board shorts, surfwear, swimwear, tracksuit tops, tracksuit pants, hooded tops, beachwear, snowwear being snow pants, snow jackets, snow salopettes, snow gloves, snowboots, underwear, sleepwear, pyjamas, belts, bandanas, leggings, gloves, scarves, socks; headgear being |

| Mark | Reg. No. | Reg. Date | Description of Goods |
|---|---|---|---|
| | | | headwear, namely, hats, caps, beanies, visors; footwear, namely, shoes, boots, sandals, thongs, slippers, slides; wetsuits, wetsuit vests, wetsuit boots, wetsuit gloves and wetsuit hoods, wetsuit shorts and tops; rash guards, namely, rash shirts and rash vests |

12.    True and correct copies of the registrations for the BILLABONG Marks are attached as Exhibits 1-3.

**B.    *Volcom and Its Asserted Trademarks***

13.    Volcom has been a global leader in the design, marketing, and distribution of premium apparel, footwear, and accessories for over three decades. Founded in 1992 on the core principles of the action-sports lifestyle, Volcom's products are inspired by the spirit of surfing, skateboarding, and snowboarding. Since its founding, Volcom has expanded to many product categories, including apparel, outerwear, swimwear, footwear, and accessories. Volcom's products are sold in more than 60 countries, as well on Volcom's official website, www.volcom.com.

14.    The VOLCOM brand is supported by a vast global trademark portfolio of more than 350 trademark filings worldwide. This portfolio includes the below VOLCOM word marks and Volcom Stone Logos, also in International Class 25 (the "VOLCOM Marks"):

| Mark | Reg. No. | Reg. Date | Description of Goods |
|---|---|---|---|
| VOLCOM | 1725875 | 10/20/1992 | activewear clothing; namely, T-shirts, sweatshirts, sweatpants, swimtrunks, walking shorts, pants, jackets and hats. |
|  | 2048820 | 4/1/1997 | T-shirts, sweatshirts, sweatpants, swimtrunks, walking shorts, pants, underwear, tank tops, shirts, jackets and hats |
| VOLCOM | 2534210 | 1/29/2002 | Men's and women's clothing, namely, swimwear, bathing suits, bikinis, cover-ups, tank tops, shirts, skirts, dresses, shorts, jumpers, capris, leggings, pajamas, [ robes, ] jerseys, socks, underwear, gloves, belts, [ ties, ] vests; headwear, namely, caps and visors; and footwear, namely, sandals, slippers, boots, and athletic shoes |

- 6 -
COMPLAINT

| Mark | Reg. No. | Reg. Date | Description of Goods |
|---|---|---|---|
|  | 2552549 | March 26, 2002 | Men's and women's clothing, namely, swimwear, bathing suits, bikinis, cover-ups, tank tops, shirts, skirts, dresses, shorts, jumpers, capris, leggings, pajamas, [ robes, ]T-shirts, pants, sweatpants, sweatshirts, swimtrunks, jackets, [ jerseys, ]socks, underwear, gloves, belts, [ ties, ] vests; headwear, namely, hats, caps and visors; and footwear, namely, sandals, slippers, boots, and athletic shoes |
|  | 2725181 | June 10, 2003 | Clothing, footwear and headwear, namely shoes, socks, sandals, shirts, shorts, pants, sweatshirts, jeans, dresses, skirts, t-shirts, tank tops, hats, beanie caps, underwear, swimming suits, ties, vests and jackets |

15.    True and correct copies of the registrations for the VOLCOM Marks are attached as Exhibits 4-8.

### C.    Plaintiffs' Relevant Business

16.    One of Boardriders' and Volcom's primary businesses is exclusively licensing use of their asserted trademarks in connection with the advertising, marketing, and sale of a variety of products and services offered globally, especially in connection with apparel. Boardriders and Volcom carefully and diligently control and monitor the commercial exploitation of its intellectual property rights. Boardriders and Volcom both carefully vet and approve licensees and the use of their intellectual property, including the asserted trademarks.

17.    One of the primary geographic markets for goods bearing the Boardriders' and Volcom's trademarks is Huntington Beach, California—also known as "Surf City, USA." Main Street in Huntington Beach is particularly important; it is the epicenter of the surf community due to the high number of surf competitions in the summer, and it attracts competitors, spectators, and tourists interested in an active lifestyle. As a result, this location is a prime area for selling surf-related apparel. Several of Boardriders' and Volcom's top retail partners have locations on Main Street in Huntington Beach, and there is also a branded Billabong store located at 126 Main Street. Consequently, sales of counterfeit and infringing goods on Main Street, Huntington Beach, are particularly damaging to Plaintiffs' businesses and goodwill.

### D.    JSInc's Infringing Conduct

18.    On information and belief, JSInc is a corporation that manages retail stores that sell discount surf-related apparel, among other things. JSInc owns and operates multiple stores, including Mission Beach Resort, Mission Beach Surf Skate, and Mission Beach Rentals, all located in Mission Beach, San Diego, California.

19.    On information and belief, JSInc recently opened an additional store at 121 Main Street, Huntington Beach, CA 92647, which is operated under the name HB Superstore. HB Superstore sells and offers for sale discount apparel products, including surf-related apparel.

20.    On June 16, 2025, a representative of Plaintiffs visited HB Superstore and observed apparel bearing the asserted trademarks offered for sale at heavily discounted prices. JSInc does not have authority to use the asserted trademarks, nor has it ever had such authority.

21.    Around the same time, Plaintiffs received a separate report from a territory sales representative that HB Superstore was offering for sale counterfeit goods featuring the asserted trademarks. The below photo from HB Superstore (included in Exhibit 9) shows these counterfeit goods offered for sale for $14.99, less than half of the $29.99 at which comparable Boardriders and Volcom apparel are typically sold:



Image from Exhibit 9

22.    Following these reports of counterfeiting, on June 18, 2025, a representative of Volcom visited HB Superstore and purchased apparel bearing marks that were identical to the asserted trademarks. Photos of samples of this apparel are below and attached as Exhibit 10. Plaintiffs subsequently examined the purchased goods and determined they are not authentic Billabong or Volcom goods. Among other things, the goods purchased from HB Superstore (i) lacked identifiers

and labels that genuine Billabong and Volcom goods include; (ii) were poor quality, including due to the use of unapproved materials and the presence of inaccurate size labels; and (iii) featured unapproved designs.

 



Images from Exhibit 10

23.     After inspecting the goods purchased from HB Superstore and confirming they are counterfeit and infringing, on June 18, Plaintiffs each wrote to JSInc to provide notice that it was infringing the BILLABONG Marks and the VOLCOM Marks, and to ask JSInc to cease and desist from selling and to destroy all counterfeit goods that used those marks. True and correct copies of these cease-and-desist letters are attached as Exhibits 9 and 11. Plaintiffs received no reply from JSInc.

24.     On information and belief, HB Superstore continues to sell counterfeit goods that infringe the asserted trademarks, despite JSInc receiving notice of its infringement. Further, on information and belief, JSInc sells counterfeit goods at its other stores that infringe the asserted trademarks.

### E.      *JSInc's Infringing Conduct Is Irreparably Harming Plaintiffs*

25.     JSInc's infringing conduct, including the activities described above, is likely to cause consumer confusion, deception, and mistake in the minds of consumers, the public, and the trade before, during, and after the time of purchase. JSInc's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Boardriders' and Volcom's genuine goods and JSInc's infringing goods.

26.     JSInc's improper activities have been and continue to be willful and deliberate.

27.     Boardriders and Volcom are suffering irreparable injury and have suffered substantial damages as a direct and proximate result of JSInc's infringing activities. For example, Boardriders' and Volcom's retail partners are losing sales to JSInc's lower priced counterfeit goods. Further, JSInc's offers for sale and sales of infringing and counterfeit goods has damaged the goodwill associated with the BILLABONG Marks and the VOLCOM Marks because consumers will associate the poor-quality JSInc counterfeit goods with Boardriders and Volcom. The damage

to the goodwill associated with the marks cannot be compensated through monetary damages.

28.    Moreover, JSInc's infringement is irreparably harming Boardriders and Volcom due to the strategic placement of HB Superstore on Main Street, Huntington Beach, as it misleads consumers during the prime season for marketing surf apparel at the key location for Plaintiffs' industry.

29.    This irreparable harm to Boardriders and Volcom will continue unless JSInc's conduct is enjoined.

## COUNT I

## INFRINGEMENT OF REGISTERED TRADEMARKS
## UNDER 15 U.S.C. § 1114

30.    Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully below.

31.    Boardriders is the owner of the BILLABONG Marks: United States Registration Nos. 1,277,128 and 4,503,766 for the BILLABONG word marks and United States Registration No. 7,177,103 for the BILLABONG UNITED Logo, each in International Class 25.

32.    Volcom is the owner of the VOLCOM Marks: United States Registration Nos. 1,725,875 and 2,534,210 for the VOLCOM word marks and United States Registration Nos. 2,048,820, 2,552,549, and 2,725181 for the Volcom Stone Logos, each in International Class 25.

33.    The BILLABONG Marks and the VOLCOM Marks are distinctive of apparel, accessories, and surf-related products originating with Plaintiffs. Through the years of sales and advertising by Plaintiffs and their predecessors in interest, the BILLABONG Marks and the VOLCOM Marks have become associated in the minds of consumers with the high-quality products that Plaintiffs have authorized to bear the asserted trademarks.

34.    Defendants have used the asserted trademarks without Plaintiffs'

authorization on commercial goods similar or identical to authorized goods, except for the unauthorized goods' inferior quality. Defendants' unauthorized use of the asserted trademarks is likely to cause confusion in the marketplace by creating the false and mistaken impression that Defendants' apparel is affiliated, connected, or associated with or that they originate with or are sponsored or approved by Plaintiffs. Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks violates the Lanham Act, 15 U.S.C. § 1114.

35.    As a proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputation, profits, and strength of their asserted trademarks. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged by, without limitation, a diminution in the value of the BILLABONG Marks and VOLCOM Marks and in the reputation and goodwill of Plaintiffs and of the BILLABONG Marks and the VOLCOM Marks in an amount to be proven at trial.

36.    Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks has caused, and if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs in various ways, including the inability to control the impact on Plaintiffs' reputation and quality-control of Defendants' products, for which Plaintiffs have no adequate legal remedy. Accordingly, Plaintiffs are entitled to provisional, preliminary, and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

37.    The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this case exceptional within the meaning of 15 U.S.C. § 1117.

38.    Plaintiffs are entitled to all remedies available under the Lanham Act, including preliminary and permanent injunctions, compensatory damages, statutory damages, treble damages, disgorgement of profits, costs, and attorneys' fees.

## COUNT II

## COUNTERFEITING OF REGISTERED TRADEMARK
### UNDER 15 U.S.C. § 1114

39.    Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully herein.

40.    Defendants have willfully used a designation that is a counterfeit, copy, or colorable imitation of the registered BILLABONG Marks and VOLCOM Marks on goods for which Plaintiffs holds federal trademark registrations.

41.    Without Plaintiffs' consent, Defendants have used the counterfeit BILLABONG Marks and VOLCOM Marks in connection with the display, sale, offer for sale, marketing, distributing, or advertising of goods for their own financial gain.

42.    Plaintiffs have not authorized Defendants' use of the BILLABONG Marks and the VOLCOM Marks to advertise, market, offer for sale, display, sell, or distribute their counterfeit products.

43.    Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks on or in connection with the display and sale of goods constitutes Defendants' use of Plaintiffs' asserted trademarks in commerce.

44.    Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks is likely to cause confusion or mistake; is likely to deceive; is likely to cause the public to believe that Defendants' product is authorized, sponsored, or approved by Plaintiffs when it is not; and is likely to result in Defendants unfairly and illegally benefitting from Plaintiffs' goodwill.

45.    Accordingly, Defendants have engaged in trademark counterfeiting in violation of Section 32(1)(a) and (b) on the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Plaintiffs for all damages related to such counterfeiting, including actual damages, infringing profits, and/or statutory damages, as well as attorneys' fees and costs.

46.     Defendants' counterfeiting has caused and will continue to cause irreparable injury to Plaintiffs.

47.     Plaintiffs have no adequate remedy at law and are thus entitled to damages in an amount yet to be determined.

48.     Defendants' egregious conduct in flagrantly selling products bearing the counterfeit BILLABONG Marks and VOLCOM Marks is willful and intentional, and thus this constitutes an exceptional case.

## COUNT III

## UNFAIR COMPETITION, FALSE DESCRIPTION, AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)

49.     Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully herein.

50.     The BILLABONG Marks and the VOLCOM Marks are distinctive of apparel, accessories, and surf-related products originating with Plaintiffs. Through the years of sales and advertising by Plaintiffs and their predecessors, the BILLABONG Marks and the VOLCOM Marks have become associated in the minds of consumers with the high-quality products produced by Plaintiffs.

51.     Defendants have used the BILLABONG Marks and the VOLCOM Marks without authorization from the respective mark holders on commercial goods similar or identical, but of inferior quality, to Plaintiffs' apparel products. Defendants' unauthorized use of Plaintiffs' Marks is likely to cause confusion in the marketplace by creating the false and mistaken impression that Defendants' apparel is affiliated, connected or associated with, or that they originate with, or are sponsored or approved by Plaintiffs. Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks violates the Lanham Act, 15 U.S.C. § 1114.

52.     As a proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputation,

profits and strength of their trademarks. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged by, without limitation, a diminution in the value of the BILLABONG Marks and the VOLCOM Marks and in the reputation and goodwill of Plaintiffs and of the BILLABONG and the VOLCOM Marks in an amount to be proven at trial.

53.     Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks has caused, and if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs in various ways, including the inability to control the impact on Plaintiffs' reputation and quality-control of Defendants' products for which Plaintiffs have no adequate legal remedy. Accordingly, Plaintiffs are entitled to provisional, preliminary, and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

54.     Plaintiffs are entitled to all remedies available under the Lanham Act, including, but not limited to, preliminary and permanent injunctions, compensatory damages, statutory damages, treble damages, disgorgement of profits, costs, and attorneys' fees.

55.     Defendants' unauthorized use of marks confusingly similar to the BILLABONG Marks and the VOLCOM Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances, making this an exceptional case. Plaintiffs are therefore entitled to recover three times the amount of actual damages, attorneys' fees, and costs incurred in this action, and Defendants' profits from their infringement of the BILLABONG Marks and the VOLCOM Marks pursuant to 15 U.S.C. § 1117(a).

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT

56.     Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully herein.

57.     The BILLABONG Marks and the VOLCOM Marks are distinctive of

apparel, accessories, and surf-related products authorized by Plaintiffs. Through the years of sales and advertising by Plaintiffs and their predecessors, the BILLABONG Marks and the VOLCOM Marks have become associated in the minds of consumers with the high-quality products authorized by Plaintiffs.

58. Defendants have used the BILLABONG Marks and the VOLCOM Marks without authorization from the respective Plaintiffs on commercial goods similar or identical to authorized goods, except for the unauthorized goods' inferior quality. Defendants' unauthorized use of Plaintiffs' asserted trademarks is likely to cause confusion in the marketplace by creating the false and mistaken impression that Defendants' apparel is affiliated, connected, or associated with or that they originate with or are sponsored or approved by Plaintiffs.

59. Defendants' use of similar marks likely to cause confusion with the BILLABONG Marks and the VOLCOM Marks is without Plaintiffs' authorization or consent.

60. Defendants' unauthorized use of similar marks likely to cause confusion with the BILLABONG Marks and the VOLCOM Marks violates the common law of the State of California.

61. Defendants' unauthorized use of the BILLABONG Marks and the VOLCOM Marks has caused, and if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs in various ways, including the inability to control the impact on Plaintiffs' reputation and quality-control of Defendants' products, for which Plaintiffs have no adequate legal remedy. Accordingly, Plaintiffs are entitled to provisional, preliminary, and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged by, without limitation, a diminution in the value of the BILLABONG Marks and the VOLCOM Marks and in the reputation and goodwill of Plaintiffs and BILLABONG Marks and the

VOLCOM Marks in an amount to be proven at trial.

## COUNT V

## FALSE ADVERTISING UNDER

## CAL. BUS. & PROF. CODE § 17500, *et seq.*

63.    Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully herein.

64.    Defendants have falsely advertised that their products are genuine BILLABONG- and VOLCOM-branded products in violation of California state and federal trademark infringement law.

65.    Defendants' acts constitute unfair, deceptive, untrue, and/or misleading advertisements in violation of California Business and Professions Code § 17500, *et seq.*

66.    Defendants knew or reasonably should have known that their counterfeit BILLABONG- and VOLCOM-branded products were not genuine.

67.    Defendants' acts further constitute unfair competition under California Business and Professions Code § 17500, *et seq.* because they are fraudulent in that, among other things, consumers are likely to be deceived about the nature and origin of Defendants' products.

68.    Defendants' acts are intentionally and knowingly directed toward perpetuating a business competing unfairly with Plaintiffs, to the diminution of Plaintiffs' profits.

69.    By reason of these acts of unfair competition, Plaintiffs have suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition. Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Plaintiffs in that they will have no adequate remedy at law to compel Defendants to cease such acts. In addition to other relief, therefore, Plaintiffs are entitled to a preliminary and permanent injunction against further infringing conduct by

Defendants.

70.    As a direct and proximate result of the aforesaid acts of unfair competition, Defendants have wrongfully taken Plaintiffs' profits and benefit of their efforts, investment of time, energy, and money. Defendants should therefore be ordered to provide full restitution to Plaintiffs due to their infringing activities.

## COUNT VI

## UNFAIR COMPETITION UNDER

## CAL. BUS. & PROF. CODE § 17200, et seq.

71.    Plaintiffs restate, adopt, and incorporate each and every allegation in the preceding and foregoing paragraphs as though set forth fully herein.

72.    Defendants have falsely advertised that their products are genuine BILLABONG- and VOLCOM-branded products, in violation of California state and federal trademark infringement law. This conduct is calculated to and does in fact deceive and mislead consumers of Plaintiffs into purchasing Defendants' products based on the misperception that the counterfeit BILLABONG- and VOLCOM-branded products originated with or are affiliated with Plaintiffs.

73.    Defendants' acts constitute unfair, deceptive, untrue, and/or misleading advertisements in violation of California Business and Professions Code § 17200, *et seq*.

74.    Defendants' acts further constitute unfair competition under California Business and Professions Code § 17200, *et seq*. because they violate California Business and Professions Code § 17500, *et seq*. as set forth above.

75.    Defendants' acts further constitute unfair competition under California Business and Professions Code § 17200, *et seq*. because they are unlawful in that they violate 15 U.S.C §§ 1114, 1125(a).

76.    Defendants' acts further constitute unfair competition under California Business and Professions Code § 17200, *et seq*. because they are fraudulent in that, among other things, consumers are likely to be deceived about the nature and origin

of Defendants' products.

77.     Defendants' acts are intentionally and knowingly directed toward perpetuating a business competing unfairly with Plaintiffs, to the diminution of Plaintiffs' profits.

78.     By reason of these acts of unfair competition, Plaintiffs have suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition. Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Plaintiffs in that they will have no adequate remedy at law to compel Defendants to case such acts. In addition to other relief, therefore, Plaintiffs are entitled to a preliminary and permanent injunction against further infringing conduct by Defendants.

79.     As a direct and proximate result of the aforesaid acts of unfair competition, Defendants have wrongfully taken Plaintiffs' profits and benefit from their efforts, investment of time, energy, and money. Defendants should therefore be ordered to provide full restitution to Plaintiffs due to their infringing activities.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray for judgment against Defendants, and each of them, as follows:

A.      That Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with any of them, be preliminarily and permanently enjoined from:

1.      Using the BILLABONG Marks and the VOLCOM Marks, as well as any other colorable imitation of the BILLABONG Marks and the VOLCOM Marks that is likely to cause confusion, mistake, or deception or to impair the distinctiveness of Plaintiffs' Marks;

2.     Using Plaintiffs' trade names, trademarks, or service marks, or any version thereof, in connection with the description, marketing, promotion, advertising, or sale of products or services not associated with or approved by Plaintiffs;

3.     Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 1) through 2) above.

B.   For an order finding that, by the acts complained of herein, Defendants have engaged in trademark infringement and counterfeiting, and that such conduct has been willful;

C.   For an order awarding, at Plaintiffs' election, statutory and/or actual damages, in an amount to be fixed by the Court in accordance with proof, including punitive and exemplary damages as appropriate, as well as all of Defendants' profits or gains of any kind resulting from each cause of action, and further for an order awarding treble damages, pursuant to 15 U.S.C. § 1117(b) or any other applicable statute, because the acts of infringement were willful and wanton;

D.   For an order finding that an award of pre- and post-judgment interest is necessary to fully compensate Plaintiffs for the damage they have sustained;

E.   For an order awarding Plaintiffs their costs, including the attorneys' fees incurred in prosecuting this action;

F.   For an order awarding Plaintiffs recovery for any unjust enrichment of Defendants;

G.   For an order awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

1

2 | Dated: June 26, 2025            **MERCHANT & GOULD P.C.**

3

4                      By: *_/s/Scott P. Shaw_*

5                          Scott P. Shaw

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT